## SOWLES *et al.* v. WITTERS.

*(Circuit Court, D. Vermont. July 2, 1888.)*

EVIDENCE—CONCLUSIVENESS—TRUSTS.

In an action, against the receiver of a bank, for dividends upon a debt for a deposit in the name of "S., trustee," the mere general statement of S. that the money deposited was his daughter's, in connection with evidence that she owned property of which he had the management, and from which the fund deposited might have been derived, it not being shown that it was derived therefrom, is not sufficient to enable the daughter to recover.

*E. A. Sowles,* for orators.
*C. W. Witters,* for defendant.

LACOMBE, J. The defendant is receiver of the First National Bank of St. Albans. When that institution closed its doors on April 8, 1884,

there was standing upon its books an account in the name of "E. A. Sowles, Trustee." It comprised two credit items, viz., a deposit of $1,300 on March 18, 1884, and a further deposit of $553.43 on April 1, 1884. There was no debit item, and the balance standing to the credit of the account when the bank suspended was $1,853.43. On July 15, 1884, the receiver duly certified in the usual form to the fact that "Edward A. Sowles, trustee," was a creditor of the bank to that amount, and subsequently two checks or drafts (for dividends from the assets) were drawn by the comptroller of the currency on the subtreasury to the order of "E. A. Sowles, trustee," and are now in the possession of the defendant. This action is brought to recover those drafts, or their equivalent in money. The action is brought jointly by "Edward A. Sowles, trustee of Susan B. Sowles," and "Susan B. Sowles." The last-named plaintiff is the daughter of Edward A. Sowles. She was a minor when the deposits were made, but since then, and before the beginning of this action, has come of age. The complaint expressly avers that Susan was and is the lawful owner in fact of the deposits; that since she has come of full age she has demanded the said money and said certificates. She prays delivery to herself in her own right. The answer puts the orators to the proof of these averments, and they must be established by satisfactory evidence before recovery can be had in this action. It will not do for the complainants merely to show that E. A. Sowles made the deposit as trustee for an unnamed beneficiary, who might or might not be Susan, but whose identity is not now shown. They must go further, and show Susan's title to the fund by proof as convincing as if, Edward A. being dead, and his trusteeship at an end, Susan B. were here as sole plaintiff, claiming to be the real owner of the fund. This view of the case renders it unnecessary to discuss the evidence at great length. It may be conceded that on the testimony as it stands the bank was notified when Sowles deposited the money that the fund was not his, but that he held it in trust for some other person. Nor need we consider whether such notification conformed to the facts, except so far as to determine whether it were money which at the time of its deposit he held in trust for Susan. It appears that, irrespective of a considerable sum of money held in trust for her by Margaret B. Sowles, Susan B. Sowles, while yet a minor, and before the date of these deposits, received from time to time a large number of gifts of personal property, choses in action, and real estate, made to her by Hiram Bellows in his life-time, by Susan B. Bellows in her life-time, and by her father, presumably before the embarrassments which culminated in the failure of the bank of which he was president. These various gifts aggregated several thousands of dollars. The income of this Hiram Bellows had in part received during his life-time, and at his decease much of it passed into the hands of E. A. Sowles. For several years prior to 1884 he was having large transactions on account of his daughter, covering "a good many thousands," and entirely independent of the specific trust fund given by Hiram Bellows' will to complainant's wife in trust for Susan. He collected moneys for her, and carried on for her a large farm of about 430 acres, given her when she was about

five or six years old. The income from the farm was large. These facts are all testified to by Edward A. Sowles, and fully explain how it might happen that on March 18, 1884, and April 1, 1884, respectively, he should find himself in possession of $1,300 and of $553.43, which belonged to his daughter. The plaintiffs must show more than this, however, and the mere general statement of Edward A. that the money he deposited on those dates was hers is not sufficient. He admits that during the excitement and harassment of that period, when his bank was tottering on the verge of bankruptcy, his memory of details is not as full as it might otherwise be, and in fact his first recollection as to the source from which the money came seems to have been at fault. Fortunately, however, the deposits were of checks which have been identified, and to entitle Susan B. Sowles to this deposit she must show ownership of these checks, or of the money they represented. It must appear by proof either that they were her property when they came to Edward A. Sowles' possession, or that they represented money which he had the right and was under the obligation to set apart for her benefit. It is here that the complainant's proof falls short. It is not shown that this money was received either as the income or the principal of any of the gifts to Susan B. Sowles above referred to. The suggestion was made upon the argument that the plaintiff Edward A. and the estate of Hiram Bellows were debtors to Susan B. for moneys of hers advanced by Edward as her trustee to pay legacies due by the estate, and that this money, belonging either to him or the estate, was applied to repay that loan. The proof, however, nowhere shows that any money of Susan B. had been used to pay the debts of Hiram Bellows' estate, while it appears quite plainly that the amount of the first deposit was derived from the foreclosure of a mortgage originally the property of Hiram Bellows, and as to which there is nothing to show that it was ever distributed from his estate to any particular individual. Let there be a decree dismissing the bill.

WHEELER, J., concurs.